**FILED - LN**
August 5, 2024 12:27 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:___ pm /___  SCANNED BY: /MM/

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

United States of America §
§
§  Case No. 1:95-CR-23
§
§
§
v. §
§
§
§
§
Danny White §

## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### UNDER 18 U.S.C. § 3582(c)(1)(A)

Danny White ("Mr. White") has served 29 years and 3 months of a mandatory life sentence. There is no parole in the federal system, as Mr. White is currently set to die in prison. With no certainty he would even be released, Mr. White has spent close to three decades in prison [positively transforming his life]. He had a nearly spotless disciplinary record and is extremely remorseful for the far-reaching impact of his crimes and accepts full responsibility for his actions. However, he has already paid dearly for his choices. Requiring MR. White to spend the rest of his life in prison serves no useful propose to himself or our society. Today, for the first time in this case, this Court has authority to decide whether Mr. White should die in prison.

On November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13, authorizing the Court to reduce a term of incarceration "[i]f a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment." Notably, the Commission directed that " a change in law ... may be considered in determining whether the defendant

presents an extraordinary and compelling reason, but only when such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the Defendant's individualized circumstances." U.S.S.G. § 1B1.13.

Pursuant to the First Step Act of 2018, Mr. Whites current circumstances would not result in a mandatory life sentence if he were sentenced today. This notable shift in the legal landscape, together with the implications of Booker and its progeny, alongside Mr. White's unigue individualized circumstances, including his tremendous rehabilitation programming, and solid re-entry plan and family support constitute extraordinary and compelling reasons to warrant a sentence reduction.

Accordingly, and for all of the reasons stated below, Mr. White, Pro Se, respectfully submits this renewed Motion for Compassionate Release and moves this Court for an order reducing Mr. White's sentence to 33 years or time-served pursuant to 18 U.S.C. § 3582(c)(1)(A).

CASE BACKGROUND

MR. White's case stands as a stark testament to the severe and often disproportionate sentencing practices of past drug laws. These practices have been widely criticized by numerous federal district judges, including retired Judge Mark W. Bennett. In his article "Addicted to Incarceration," Judge Bennett specifically condemns the harsh punishment mandated by the § 851 enhancement, labeling them as arbitrary and excessively punitive . Mr. White's life sentence, a product of those outdated laws, epitomizes the most extreme consequences of the "tough on crime," stance in federal drug offenses. The manadtory life sentence imposed on Mr. White, a result of two prior drug convictions involving low-level quantities in the early 1980's reflects a time when Mr. White was grappling with drug addiction in his 20's. The government decision to enhance Mr. White's sentence based on § 851 left the judge with no alternative but to sentence Mr. White to life imprisonment, a decision made without the

2

discretion to consider the individual circumstances of his case.

## I. Federal Proceedings

On March 9, 1995, a federal grand jury seated in the Western District of Michigan indicted Danny White on charges of conspiracy to distribute in excess of one kilogram of clandestinely manufacture Methamphetamine in violation of 21 U.S.C. § 846. A federal arrest warrant was issued for Mr. White's arrest on the same date. On March 15, 1995 Mr. White was arrested, without incident, simultaneously with the execution of federal arrest warrant at the Rancho Cucamonga, California, residence. NO! drugs seized during the search, only a handgun locked in a safe and numerous drug related records linking Mr. White to the shipment/distribution of Methamphetamine from California to the Western District of Michigan.

Following Mr. White's arrest on March 15, 1995, Mr. Whites went to trial and was found guilty on June 13, 1995 of Count One 21 U.S.C. § 846(a) Conspiracy to Distribute Methamphetamine, with Count Two and Three 21 U.S.C. § 843(b) unlawful use of a communication facility, and Count Five 21 U.S.C. § 841(b)(1)(a) Distribution of Mathamphetamine. Mr. White was convicted on all four counts of the superseding indictment. Id. Mr. White was held accountable for 25 kilograms of Methamphetamine, yielding a base offense level of 38 under guideline 2D1.1(c)(1). The Court increased Mr. White's base offense level by two under 2D1.1(b)(1). The adjusted offense level for Count 1,2,3, and 5, which are grouped together pursuant to 3D1.2(d), is 40; Also, the court found that Mr. White has 11 criminal history points and that this offense occurred while Mr. White was on probation , resulting in two additional points. Accordingly, the court found that Mr. White has a total criminal history points of 13 which placed Mr. White in criminal history category six (6) (See Sentencing Transcript, Pages Exhibit A 41,42,43) Mr. White's career offender status at the time of his original sentencing enhanced his total offense level to 40 and pushed Mr. White to criminal history category VI. (Sentencing Transcript 41,42,43). Based on a

total offense level of 40 and criminal history of VI, Mr. White's guidelines range at the time of original sentencing was 360 months to life. (Sen. Transcript 41,42,43,44,45,46). However, because Mr. White's statutory mandatory minimum sentence was life due to the government's filing of the § 851 enhancement, the District Court sentenced Mr. White to a term of life imprisonment on September 11, 1995. (See Exhibit A, Sentencing Transcript at 41,42,43-47). Ex-A

   The Sixth Circuit affirmed Mr. White's conviction and sentence in June 1997 Case No. 95-2059. Pursuant to 28 U.S.C. § 2255, Mr. White later moved to vacate, set aside, or correct his sentence in October1998. District Court "denied" the 2255 motion, "denied" the certificate of appealability Case No: 5:98-CV-144 July 2003. August 18, 2003 Notice of Appeal to Circuit Court Case No: 03-2090 "denied" 2003 subsequently, Mr. White filed several motions seeking relief or reconsideration from the denial of his § 2255 motion, but all motions were denied. Case No.:04-5030, No: 06-2262. On June 27, 2016 Mr. White filed a Motion under 28 U.S.C. §§ 2255(f)(4) arguing that his "life" sentence is unconstitutional because his California prior drug conviction is now misdemeanor for all purposes. This District Court of Michigan transferred the case to the Appeal Court for consideration as a motion for authorization to file a second and successive order authorizing this District Court to consider Second and Successive Motion; Case No: 16-1939 In Re: Danny White originating Case No: 1:95-CR-00023-6; 1:16-CV-00809 "Remand." Later"denied" in District Court 2018.


II Prior California State Convictions
   The government's use of the § 851 enhancement was based on those two prior California State felony convictions: (1) Possession of a controlled substance in violation of Cal. Health and Safety Code § 11350(a) (Los Angeles Superior Court No: A538944) and (2) Possession for sale of cocaine in violation of Cal. Health and Safety Code § 11351 (Los Angeles County Superior Court Case No. A539086.)

4

In November 2014, California voted Proposition 47, "The Safe neighborhood and Schools Act." United States v. Diaz, 838 F.3d 968, 971 (9th Cir. 2018) (Citing Cal. Penal Code § 1170.18 Proposition 47 acted to "reduce" future convictions under § 11350(a) from a felony to a misdemeanor. Proposition 47, also permits previously convicted defendants to petition the court for a "recall of sentence," which, if granted, would effectively reclassify their qualifying felonies as misdemeanors." Id. Under this new California law, it is "provided that any felony conviction that is recalled and resentenced ... or designated as a misdemeanor ... shall be considered a misdemeanor for all purposes." Id. (quoting Cal. Penal Code § 1170.18(k).

*see Exhibit B*

Mr. White successfully petitioned the Superior Court of California and on September 22, 2015, the state court ordered Mr. White prior conviction for Count (1) of Case No.:A538944 to be retroactively downgraded from a felony to a misdemeanor. See Exhibit B, Minute Order, the people of the State of California vs. Danny White, Case No: A538944.

Later in June of 2016, Mr. White filed a successive motion under § 2255 arguing now that his prior felony conviction in California has been downgraded to a misdemeanor, the life sentence Mr. White is serving violated the constitution. The court "denied" the successive § 2255 motion since at the time of Mr. White's underlying federal conviction, his conviction for Count One of Case No. A538944 was a felony.

III Pervious Compassionate Release Litigation.

The Judge noted that the reasons Mr. White presented in his previous motion for compassionate release at that time did not seem to need the then applicable standard for such relief, by not exhausting his remedies, the Court still did not consider whether "extraordinary and compelling reasons" existed to justify Mr. White's release.

Regarding the length of Mr. White's sentence in light of changes in the law pursuant to the First Step Act., the Court was not in anyway "sympathetic" to Mr. White position; However, in

5

light of the legal landscape in the Sixth Circuit, the Court is bound by prior decisions of the Sixth Circuit, "explained" non-retroactive statutory reforms in the First Step Act. of 2018. As a matter of law can not be used to find "extraordinary and compelling reason's for a sentence reduction under `§ 3582(c)(A)(i)."

Remarkably, the federal sentence landscape has continued to evolve in the last few years since the Court denied Mr. White's previous compassionate release motion. In light of the recent 2023 guideline amendment to compassionate release, Mr. White now moves the Court to reduce his sentence to 33 years or time served as to all Five (5) Counts of the indictment. Mr. White is serving a sentence that would be "significanlty" reduced if sentence today. However, today this Court is not bound by certain cases. Instead the commission's policy statement controls. "See infra" Legal background, Part II.

## LEGAL BACKGROUND

I. The First Step Act's profound changes § 851 Enhancements and Sentence Reduction Statute.

A. § 851 Enhancements

In 2018, recognizing the unjustified brutallity of § 851 enhancements, Congress significantly reformed the laws that led to Mr. White's "life" sentence. In Mr. White's case, the government's § 851 notice added a second and third "strikes" that increased Mr. White's mandatory minimum from 10 years to life. See 21 U.S.C. § 841(b)(1)(A) (1995). Exhibit-B

The § 851 enhancement, known for it's extreme severity and inconsistenty often discriminatory application, has been the subject of considerable criticism described by one judge in United States v. Kupa, 976 F. Supp 2d 417, 420 (E.D.N.Y. 2013) as "ultra-harsh," it let to "enhance mandatory sentences that no one not even prosecutors themselves - think are appropriate." The same judge likened it to a "two-by-four to the forehead," used to "coerce guilty pleas and sentences so excessively severe they take your breath away." Id. In United States v. Price, 496 F.

6

Supp. 3d 83, 87-88 (D.D.C. 2020), another judge characterized the § 851 sentencing scheme as "draconian," expressing deep dissatisfaction over imposing life sentences based on two non-violent prior drug convictions.

The application of § 851 enhancements has been notably unjust, disproportionaly effecting Black and Brown men. The use of these enhancements varied significantly across districts, leading to a lack of uniformity in this application, as observed in United States v. Young, 950 F. Supp. 2d 881, 903 (N.D. Iowa 2013), the geographic and racial disparities in the application of § 851 enhancement are "stunningly arbitrary ." For instance in the case of Mr. White, had he been charged just 600 miles away in the Northern District of Illinouis he likely would have avoided a mandatory life sentence, as the U.S. Attorney's Office there "very rarely" applied a double § 851 enhancement, even when justified by prior convictions. Data from the Sentencing Commission corroborates these disparities. A 2018 report revealed that "851 enhancements were applied inconsistently," with significant geographic variations in their filing withdrawal, and application. Tragically, but not unexpectibly," Black offenders," such as Mr. White, "were impacted most significantly" by the enhancement.

While § 851 enhancements still carry stiff penalties, the current mandatory minimums are far lower than those that existed at the time of Mr. White's sentencing. In particulor, the First Step Act changed the mandatory minimum sentence a defendant faces if they have two qualifying convictions under 21 U.S.C. § 851, and in addition, it changes what constitutes as a qualifying conviction.

The mandatory minimum a defendant faces today for two qualifying prior felony conviction; is 25 years, rather than life; the mandatory minimum a defendant faces today for one qualifying felony conviction is 15 years; and qualifying drug felony conviction are now much more serious felonies; in the context of a drug felony, the defendant must have served a term of imprisonment of more then 12 months on the qualifying prior

offense, and the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense. See, First Step Act. Section 401; 21 U.S.C. § 841(b)(1)(A); 21 U.S.C. § 802(57). In addiction, a qualifying drug felony is defined as "an offense under State law, involving manufacturing , distributing, or possessing with intent to manufactuor or distribute, a control substances (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802), for which a maximum term of imprisonment of ten years or more is prescribed by law." 21 U.S.C. § 802(57) (incorporating the definition at 18 U.S.C. § 924(e)(2)).

B. The Evolution of 18 U.S.C. 3582(c)(1)(A) Post-First Step Act.

18 U.S.C. § 3582(c)(1)(A) permits a court to reduce an individual's sentence, upon consideration of § 3553(a) factors, in cases where "extraordinary and compelling reasons warrant such a reduction" and a reduction is consistent with "applicable policy statements." 18 U.S.C. § 3582(c)(1)(A). Importantly, at the time the sentence reduction authority was created, Congress expressly delegated the authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction" to the Commission. 28 U.S.C. § 994(t). The Supreme Court recently underscored this directive, explaining § 3582(c)(1)(A) is an example of "Congress expressly cabin[ing] district courts' discretion by requiring courts to abide by the Sentencing Commission's policy statements." Concepcion v. United States, 142 S. Ct. 2389, 2401 (2022)(emphasis added).

Originally, § 3582(c)(1)(A) motions were to be initiated by the BOP, not the incarcerated individuals. The Commission's policy statement § 1B1.13 reflected this, addressing only federal Bureau of Prisons ("BOP")-initiated motions. The First Step Act, however, amended § 3582(c)(1)(A), pursuant to Section 603(b) to permit individual in prison to file motions directly with the court after exhausting BOP options.

The Commission's lack of a quorum for nearly five years post-

First Step Act resulted in a significant delay in amending §
1B1.13, leaving no "applicable" policy guidance for motions filed
by incarcerated individuals from 2018 to 2023. Thus absence of
guidance by the Commission resulted in a split among federal
circuits over whether certain "changes in law" could be deemed
extraordinary and compelling reasons. See USSG App. C, Amend.
814, Reasons for Amendment at 11 (2023)(explaining circuit split.
The Sixth Circuit, like all but one of the eleven circuits to
address the issue, held that § 1B1.13 did not apply to motions
filed by individuals in prison, as opposed to by BOP.

II. The Binding Nature of the Commission's Updated Policy
Statement.

As of November 1, 2023, this Court is bound by the newly
revised § 1B1.13. With the recent amendments, the Commission has
fulfilled its duty to describe what are "extraordinary and
compelling reasons," including a new category for "unusually long
sentences" under § 1B1.13(b)(6).

The Commission's authority in this space comparable to its
authority under a neighboring provision § 3582(c)(2), regarding
retroactive guideline amendments. This is to say: its authority
is mandatory. Section 3582(c)(1)(A) and (C)(2) were drafted
together and appear in the same subsection. They share a
prefatory phrase and both allows a reduction only where it "is
consistent with applicable policy statements by the Sentencing
Commission"; each of these facts supported the Supreme Court's
holding in Dillon v. United States, 560 U.S. 817, 825-26 (2010),
that § 3582(c)(2) was mandatory authority -- even post-Booker.
Also, the Sentencing Commission's enabling statute, 28 U.S.C. §
994, speaks of § 3582(c)(1)(A) and (C)(2) together in granting
the Commission authority to promulgate policy statements that "in
the view of the Commission would further the purposes set forth
in section 3553(a)(2) of title 18," including regarding the
"appropriate use of ... the sentence modification provisions set
forth in section[] ... 3582(c)." 28 U.S.C. § 994(a)(2)(c).

Thus, what the Sixth Circuit has said about the Sentencing

9

Commission's authority in the § 3582(c)(2) context applies equally in the § 3582(c)(1)(A) context:

When Congress granted the district courts authority to reduce otherwise valid sentences pursuant to § 3582(c)(2), it explicitly restricted judicial discretion by incorporating the Commission's policy statements, which limit the extent of the reduction: "the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2) (emphasis added). The Commission's policy statements (which are an implementation of its authority to decide whether and to what extent its amendments are retroactive) are binding because they are an exercise of that statutory authority.

United States v. Washington, 584 F.3d 693, 700 (6th Cir. 2009); See also e.g., United States v. Doe, 564 F.ed 305, 310 (3d Cir. 2009)("The plain language of the statute, therefore, specifically incorporates the Commission's policy statements."); United States v. Cunningham, 554 F.3d 703, 708 (7th Cir. 2009) ("When Congress granted district courts discretion to modify sentences in section 3582(c)(2), it explicitly incorporated the Sentencing Commission's policy statements limiting reductions ... Thus, the Commission's policy statements should for all intents and purpose be viewed as part of the statute."); United States v. Taylor, 743 F.3d 876, 879 (D.C. Cir. 2014) (Congress expected-- indeed, required--that binding policy statement would govern sentence reduction proceedings.").

The Sentencing Commission's authority to define the contours of "extraordinary and compelling" in the § 3582(c)(1)(A) context is not new or controversial. In may seem that way, however, because § 3582(c)(1)(A) jurisprudence evolved only recently, when there was no policy statement that applied to defendant-filed motions. See United States v. Jones, 980 F.3d 1098, 1109 (6th Cir. 2020) (holding that the pre-amendment policy statement was

not applicable to defendant-filed motions). During this period a
sort of common law of § 3582(c)(1)(A) developed, with circuit
courts providing guidance and limitations--particularly regarding
what could be considered "extraordinary and compelling." See
United States v. McCall, 56 F.4th 1048, 1005-60 (6th Cir. 2022)
(en banc) (restricting district courts' discretion to find that
certain circumstances were "extraordinary and compelling"); See
also e.g., United States v. Thacker, 4 F.4th 569 (7th Cir.
2021)(Same). But See e.g., United States v. Chen, 48 F.4th 1092,
1098 (9th Cir. 2022)(declining to erect any categorical
limitations in the § 3582(c)(1)(A) context, in the absence of an
applicable policy statement).

In McCall, the Court noted that the First Step Act reduced
the penalties for certain drug offenses in Section 404 and made
the reductions fully retroactive. McCall, 56 F.4th at 1061.
However, the sentencing reform provisions in Section 401 and 403
were not made fully retroactive. Id. at 1057. Too hold that the
later amendments "could still amount to an extraordinary and
compelling reason for relief," the court reasoned, would "fail[]
to grapple with congressional design, expressed through the text
of the statute, in which Congress chose not to make certain
sentencing amendments retroactive." Id. (internal quotations and
citation omitted").

For present purposes, the most important thing to be said
about the McCall decision is the court's explicit recognition
that it's holding filled a void "[u]ntil the Sentencing
Commission updates its policy statement" to apply to defendant-
filed motions. Id. at 1045. The court did not hold that the
Commission could not issue a new policy statement that permitted
a nonretroactive change in law to be considered "extraordinary
and compelling" under § 3585(c)(a). Id. at 1054 n.3. It also
correctly observed that once an applicable policy statement was
issued, any sentence reduction would have to be consistent with
it. Id. at 1054.

Notably, citing the statutory mandate to the Commission to
provide guidance to judges considering such sentence reduction

motions, the government wrote in Jarvis v. United States, a
petition to review a decision of the Sixth Circuit, that "Nobody
disputes ... that the Commission has the power--indeed, the
statutory duty--to promulgate a policy statement that applies to
prisoner-filed motions, or that it could resolve this particular
issue." In other cases as well, the government successfully
opposed petition on the ground that the statutory scheme vested
the decision in the Commission, not the Supreme Court.

Congress always intended the Sentencing Commission, rather
than courts on their own, to set policy for § 3582(c)(1)(A). See
§ 994(a)(2)(G) & (t). And now, the Commission has promulgated a
policy statement that governs defendant-filed motions under §
3582(c)(1)(A): USSG § 1B1.13. Thus, just as the Commission's
policy statement regarding retroactive sentencing guidelines
amendment (USSG § 1B1.10) is mandatory authority governing
motions.

Today this Court has the opportunity to address the concerns
previously expressed by many judges across the United States
regarding Mr. White's life sentence. In light of the Commission
updated policy statement, the court is now positioned to
reevaluate Mr. White's sentence and reduce it to 33 years or
time served. This shift in the legal framework presents pivotal
chance to rectify the disparities high-lighted by the Honorable
Judge Bennett. This development opens the door to a more
equitable application of justice in Mr. White's case.

## DISCUSSION

The court can and should reduce Mr. White's life sentence to
33 years or to time served. Mr. White has already served 29 years
and 3 months, over a quarter of a century - in prison under
outdated federal drug laws. Mr. White has satisfied the
exhaustion requirement: On May 31, 2024, he sent a request to the
Warden at F.C.I. Mendota to file a reduction in sentence. See
Exhibit C, Letter to Warden. Mr White specifically raised
argument under USSG § 1B1.13(b)(5) and (B)(6). Id. More then 30
days have lapsed since his request and as of today, Mr. White has

yet to receive any type of response from the Warden. He is precisely the type of defendant the Commission has in mind when it amended the compassionate release guidelines. In that regard. 1. Mr. White circumstances fit squarely, within the Sentencing Commission definition of extra ordinary and compelling circumstances that warrant a reduction in sentence. Additionally, Mr. White is not a danger to the community as required by USSG § 1B1.13 and 18 U.S.C. § 3142(g). Moreover, 2. Mr. White tremendous rehabilitation effort are on extraordinary and compelling circumstances warranting release. 3. The factors identified in 18 U.S.C. § 3553(a) favor a reduction in this case.

1. Mr. White Circumstance Fit Squarely Within § 1B1.13(b)(2)'s "Unusually Long Sentence."

Despite judges across the united States concern that Mr. White "would have a significantly reduced sentence" under current sentencing standards, many of the judges across the United States previous orders denying compassionate release was constrained by Sixth Circuit precedent. At the time, the precendent bared judges from considering non-retroactive changes in the law as extraordinary and compelling reasons for sentence reduction. However, the Commission's newly amended policy statement provided that on extraordinary and compelling reasons for a sentence reduction exists where: 1. A defendant has served at least 10 years of; 2. An unusually long sentence; and 3. A change in the law produced a "gross disparity" between the sentence being served and the sentence likely to be imposed at the time the motion is filed." See USSG § 1B1.13(b)(6) Mr. White's circumstances easily satisfy these requirements.

A. Mr. White is serving an unusually long sentence, and he has served more than 10 years.

Mr. White has survived 29 years and 3 months in federal prison far exceeding the Ten (10)_ years necessary for relief. He is serving a mandatory life sentence that is "unusually long," exceeding in severity only by the death penalty. Although the

13

Commission did not specifically define what constitute an "unusually long" sentence, the Commission's data suggests a context for courts to determine whether a sentence meets this criterion. As the Commission observed, life sentences in the federal system are rare. A life sentence is even more rare in drug trafficking cases, "having been imposed in less than one-third of one percent of all drug trafficking cases. "More recent data shows that life sentences are so rare that they represent" 0.2 percent of the total offender population."

Between 2013 and 2022, "fewer then 12% (11.5% of all offender's were sentenced to a term of imprisonment of ten years or longer.

In 2022, the average sentence imposed for drug trafficking offenders was 78 months. Given that Mr. White's mandatory life sentence is drastically longer than those of more than 88% of all other defendants sentenced in the last decade, his sentence is unusually long. Indeed, his sentence is substantially longer than the average federal sentence imposed today for murder.

As the Supreme Court noted in United States v. Graham, "punishments that did not seem unusual at one time many, in light of reason and experience, be found unusual at a later time." 560 U.S. 48, 85 (2010)(Stevens, J., concurring). Because of the proportionally review must never become effectively obsolete. Id. Here, the proportionally of Mr. White's sentence when compared with similar and indeed more culpable conduct shows that it is unusually lengthy. The compassionate release statute, from its inception, allows courts to revisit unusually long sentences to determine if they are still oppropriate in light of all circumstances.

B. There is a Gross Disparity Between the Sentence Mr. White Received and the one he would likely received under today's sentencing landscape.

The legal landscape is radically different now then when Mr. White was sentenced in 1995. The sentencing guidelines are now advisory rather than mandatory. United States v. Booker, 543 U.S. 220 (2005). As the Supreme Court noted in Kimbrough v. United

States, "post" Booker, a district court may determine that, in the particular case, a within guideline sentence is greater than necessary to serve the objective of sentencing." 552 U.S. 85, 91(2007).

Compounding to that fact, Section 401 of the First Step Act amended 21 U.S.C. § 851, reducing the enhanced mandatory minimum sentence based on appropriate notice setting forth two prior predicate convictions from life imprisonment to 25 years. Instead of allowing an enhancement based on any prior felony drug offense, the First Step Act required that the prior offense must be a "serious drug felony." See 21 U.S.C. § 841(b); 21 U.S.C. § 802(57); and 18 U.S.C. § 924(e)(2). As noted above, Mr. Whites sentence was enhanced for previous convictions of possession of a controlled substance (less then 7 grams of cocaine) in 1987 when he was 22 years old and possession for sale of a controlled substance (less than 3 grams of cocaine) in 1987 both to run concurrent. Today, only one conviction would qualify as a "serious drug felony" pursuant to 21 U.S.C. § 841(b); 21 U.S.C. § 802(57); and 18 U.S.C. § 924(e)(2).

Today, rather then his current mandatory life sentence, Mr. White would face a mandatory minimum of 10 years to 25 years. This represents a stark and profound disparity, with the difference in sentencing essentially a matter of life or death- not being justified by the facts of this case.

As previously mentioned, Mr. White was automatically assigned an offense level of 40 with a criminal history category of VI (6) at his 1995 sentencing due to his career offender status, resulting in a guideline range of 360 months to life. Today, while Mr. White would technically still fall under the career offender classification, this Court is empowered to adjust his sentence as it sees fit within the bounds of the law, The post Booker era affords this Court the discretion to deviate from the sentencing guidelines, a practice increasingly common in district courts, especially for career offenders. According to the United States Sentencing Commission 2022 Report, 54.8% of career offenders benefited from a variance, with 99.2% of those being

downward variances, averaging a sentence reduction of 39.9%.

The Sixth Circuit has consistently recognized the sentencing judge's discretion to determine if the defendants criminal history category significanlty overrepresented his prior crimes, a principle highly relevant to Mr. White's case. See United States v. Smith, 278 F.3d 605(6th Cir. 2002); See also United States v. Washington, 2001 WL1301744 at *5 (6th Cir. 2001). In Washington, the defendant has been convicted for three crimes involving, respectively, eleven rocks rocks of cocaine, one rock of cocaine, and 20.1 grams of cocaine. Id. Mr. Washington was ultimately sentenced to his mandatory minimum of 10 years. Id at *6. In the instant case, Mr. White's circumstances are very similar to Mr. Washington's Mr. White's prior conviction combined weighted less than 27 grams of cocaine. Mr. White contends that given the circumstances of his case - especially when viewed through the lens of the Sixth Circuit rulings, his criminal history category significantly overrepresents the severity of his prior crimes, and a below guideline sentence of 348 months (equivalent to the 29 years he has already served) is warranted and just.

A life sentence with absolutely no possibility of parole screams a person is beyond hope, beyond redemption. It suffocates mass potential as it buries people alive, or as the Supreme Court has said, mandatory life sentences "share some characteristics with death sentences that are shared by no other sentence. The State does not execute the offender, but the sentence alters the offenders life by forfeiture that is irrevocable. It deprives the convict of the most basic liberties without giving hope of restoration." Graham, 560 U.S. at 69-70 (emphasis added).

Other district courts have recongnized situations such as Mr. White's as presenting a "gross disparity" and granted sentence reductions accordingly for example, in United States v. Day, the judge reduced an § 851 life sentence to time served where the defendant's guidelines range was "substantially lower" than life expressing "no doubt" that the difference between the life mandatory minimum and the guidelines was a "gross disparity." 4/4

F. Supp. 3d790, 806(E.D. Va. 2020); Order, 05-CR-460-AJT(Dec. 4, 2020), Doc. No. 273 (granting reduction to time served); See Also United States v. Nicholson, 03-CR-00268, slip. op. at 5 (D. MD, May 21, 2021). Doc. No. 394 (granting sentence reduction to time served in § 851 mandatory life cases and noting the difference between life and a low-end guideline range of 30 years constituted a gross disparity.")

The circumstances presented here - a gross disparity resulting from the First Step Act's reforms to § 851 - is precisely the sort of disparity the Sentencing Commission had in mind when it promulgated § 1B1.13(b)(6). In its "reasons for amendment," the Commission explained that it agreed with law that had developed in the First, Second, Fourth, Ninth, and Tenth Circuit (when there was no applicable policy statement) permitting district courts to find that certain legal changes, including the First Step Act's profound once in - a generation to drug mandatory minimum, could be considered as part of the "extraordinary and compelling reasons" analysis. See USSG App. C, Amend. 814, Reason for Amendment at 11 (Nov. 1, 2023)(citing, e.g., United States v. Chen, 48 F.4th 1092, 1098(9th Cir. 2022)(applying this rule to the First Step Act's § 924(c) change); United States v. McGee, 992 F.3d 1035, 1047-48(10th Cir. 2021) (applying this rule to the First Step Act's § 851 change).

There is every reason to believe, especially, in light of the average sentencing date set forth above, that Mr. White's sentence today would be much lower than the mandatory life sentence he is serving.

C. Mr. White is Not a Danger to the Community

Section 1B1.13 also states that an incarcerated individual must not be "a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g)." USSG § 1.B1.13(a)(2). Mr. White passes the "danger" test in § 1B1.13(a)(2) and § 3142(g). Mr. White is 59 years old with extensive rehabilitation over the last 29 years, and a low risk of recidivism. See infra, Discussion, Part III B. These factors

17

coupled with the supportive family standing by ready to embrace him upon his release, collectively affirms that Mr. White does not pose a threat to individuals or the community. This assertion is further reinforced by the additional consideration under § 3553(a), which collectively underscores Mr. White's suitability for release without compromising public safety.

## II. Mr. White's Rehabilitation is an Additional Extraordinary and Compelling Reason Warranting Release.

Separate and apart from the "unusually long sentence" provision of the Commission's new guidelines discussed above, there are other bases for determining that Mr. White's case presents extraordinary and compelling reasons warranting a reduction in sentence. In 1B1.13(b)(5), the Amendments reaffirm the "Other Reasons," on "Catch-All" provision originally adopted in 2007, which allows defendants to make a showing of extraordinary and compelling reasons through a combination of circumstances. Specifically, subsection (b)(5) provides that reasons other then the specified ones (age, medical condition, extraordinary family circumstances, and sexual abuse in prison), but similar in gravity, to them, may constitute extraordinary and compelling reasons. Id.

In adopting subsection (b)(5), the Commission's stated "reasons for amendment" specifically placed it's imprimature on the extraordinary and compelling reasons on which district judges around the country had based sentence reductions in the years between the First Step Act and the effective date of the Amendments. Id. The Amendments make clear that while "rehabilitation of the defendant is not, by itself , an extraordinary and compelling reason; rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Id. See § 994(t) Courts in the Sixth Circuit have found rehabilitation to be extraordinary and compelling when considered with other facts.

Mr. White has undergone a profound transformation during his 29 years incarceration, evolving far beyond the man he was when he first entered prison. HE has spent these years observing the world his family evolve from behind bars, serving as a constant reminder of the grave mistakes he made as a young man during the 1990's despite the overwhelming prospect of a life sentence - a reality that would be unbearable for many - Mr. White chose a path of self - improvement and reflection, fully acknowledging the gravity of his crimes and expressing "sencere" remorse for his actions. Faced with a life sentence in 1995, Mr. White made a conscious decision to better himself rather then succumb to bitterness. He embarked on a journey of introspection and personal development, striving to be a positive influence on his children despite the constraints of incarceration. From the very beginning of serving his life sentence, Mr. White began engaging in various educational programs and obtained his G.E.D. within the first two years of incarceration. Id, at 7 To date, he has completed an impressive array of courses, including becoming a Paralegal through Blackstone Career Institute, V.T. Business, Computer, V.T. Solder Certification, Personal Fitness trainer, VT motors, Personal Growth 7-habits, DAP drug program 500 hours. He maintained consistant institutional employment throughout his sentence, serving "above average work education." Id. at Exhibit E. Mr. White presently serves as an orderly and has previously contributed his skills to UNICOR as a clerk/cable worker during his time at Lompoc Id. It is clear that Mr. White has acquired valuable vocationed skills that will greatly assist him in finding employment upon release.

Courts in this circuit recognize such commitment as an exceptional demonstration of rehabilitation. See Bookers, 2022 WL 17814192, at *5 (defendant's course work demonstrated rehabilitation and attempt to better himself despite facing a severe sentence with no promise of imminent release from prsion"); Bolden, 2021 WL 2228060, at *5 (significant rehabilitation where defendant "completed over forty, educational courses" became a ordained minister, and received ministry

19

license). Mr. White's dedication to personal growth, and being open to programming sugestions and appears to be motivated to better himself." BOP records at Exhibit $\underline{E}$, furthermore, they have observed his positive interactions within the institution; describing him as "respectful towards staff and other inmates. Id.

Moreover, Mr. White is extremely fortunate to have tremendous family support. Many of them have written letter to the Sentencing Commission on Mr. White's behalf See Exhibit $\underline{E}$ letter of support from family. He maintains daily communication with his fiance, Nina Totter, and has preserved a strong bond with his children against all odds. His family and friends are standing by ready to embrace him upon release and assist him with re-entering society in virtually every way possible. Id. Should the Honorable Court graciously reduce Mr. White's sentence to time served, as humbly requested, he plans to reside in Fresno, California alongside Nina Trotter, his partner of nearly three decades and the matter of his daughter Shania. Id. Significantly, Mr. White's brother, Mark White a owner of a trucking company, is prepared to provide Mr. White with employment opportunities. Id.

Mr. White's transformation during his incarceration represents a profound, living apology to society, one made through consistent, positive actions. His courage to denounce his gang association, and reframe from prison politics made Mr. White a target for gang members, but he stood his ground, and fought through the abuse and gang hits. This in truth by its self form an extraordinary and compelling case for relief. Coupled with the gross sentencing disparity resulting from his § 851 enhancement, these factors deeply underscore the justice in reducing Mr. White's sentence to 33 years or time served.

### III. The Factors Identified in 18 U.S.C. § 3553(a) Weight Strongly in Favor of Sentence Reduction to Time Served.

When deciding a motion for relief under 18 U.S.C. § 3582(c)(1)(A), a court should consider factors such as the

20

defendants rehabilitation, his history and characteristics, sentencing disparity as compared to his co-defendants and other factors that bear on who the defendant is today. See USSG §. 1B1.13 (requiring consideration of, inten alia, the factors set forth in 18 US.C. § 3553(a). The § 3553(a) factors discussed below unequivocally support reducing Mr. White's sentence to 33 years or time served.

A. History and Characteristics; Circumstances of the Offense.

Mr. White was 29 years old when he was incarcerated; he is now going to be 59 year old this year in September 3, 2024 and has spent almost half of his life in prison. Over the past 29 years, Mr. White has shown exemplary character. As further detailed in Discussion, Part II above, Mr. White has worked hard while incarcerated to better himself through educational courses, Vocational training, and consistent employment. Further, Mr. White is not a hard man and has maintained a near spotless disciplinary record throughout his close to (3) three decades of incarceration. When assessing the sentencing factors, this Court must consider "the most up to date picture" of Mr. White including post-sentencing rehabilitation. Pepper v. United States, 562 U.S. 476, 492(2011)(evidence of the "defendant") conduct since his initial sentencing constitutes a critical part of the "history and characteristics of a defendant that Congress intended sentencing courts to consider.")(citation omitted) Concepcion V. United States, 142 S. Ct. 2389, 2395, 2398 (2022)(Judges have a "responsibility" to consider "the whole person before him or her "when modifying a sentence).

Growing up in Los Angeles California, Mr. White's mother passed away from cancer when he was 7 years old his father was a acoholic and drug user whom was very abusive and disfunctional unable to deal with raising seven children, allowing Mr. White and his sibling to run wild without any adult supervision, were Mr. White was exposed to running the streets, stealing bikes, stealing out the super market to eat, eventually sending Mr. White to juvenile hall to being placed in a boys homes. By not

having a mother and responsible parent. Mr. White could not read or understand life rules which denied him the "fair" opportunity to be molded and shaped and nurtured by his mother with morals and principles and Mr. White was not afforded the opportunity to excell in school. Anything educational.

In 1987 at the age of 22, Mr. White was sentenced to 4 years state prison in large part due to selling drugs, and using drugs. Mr. White makes no excuses for his criminal conduct, however, it is important to note that all of these convictions while he was suffering from drug use, formed the predicates for the § 851 enhancement that resulted in his mandatory life sentence.

Mr. White was arrested in the instant case 29½ years ago back on March 15, 1995. Today he realizes the devastating effects drugs have had on his community, and others, and he sincerely regrets his role in their proliferation. In a heartfelt way.


B. The Need for the Sentence to Reflect the Seriousness of the Offense, to Promote Respect for the Law and Provide Just Punishment.

There is no doubt that Mr. White's offenses in the instant case were serious. However, the 29½ years he has already spent in prison is sufficient "to reflect the seriousness of the offense" and to "provide just punishment for the offense." § 3553(a)(2)(A). Mr. White now has a life sentence, and yet if the prior conviction had been a misdoneanor at the time of his conviction in this case, it could have been a significantly reduced sentence. This should bother the court." See Exhibit A.<sup>B</sup> Congress echoed this sentiment by significantly overhauling the law surrounding § 851 enhancements and concluded that a 10 year mandatory minimum is more appropriate than a mandatory life sentence to reflect the seriousness of Mr. White's conduct.

Today neither of Mr. White's prior convictions would qualify as predicates to enhance his sentence.

Requiring Mr. White to spend the rest of his natural life in prison is significantly "greater than necessary." Having been in prison for 29 years - nearly half of his life - Mr. White has

22

certainly served a stiff penalty that reflects the seriousness of the offense, maintains respect for the law, and provides just punishment. This long sentence is sufficient to have afforded adequate deterrence to criminal conduct. Having Mr. White spend another day in prison is unnecessary to achieve individual or general deterrence. Instead, the very fact that Mr. White was sentenced to life in the first place and has already spent 29 years behind bars provides a stark warning for any person contemplating similar conduct.

Moreover, Mr. White is highly unlikely to re-offend if released. There is a statistically significant correlation between length of incarceration and age of the defendant in relation to recidivism. According to the Sentencing Commission, "offenders incarcerated for more then 120 months were identified having a statistically significant deterrent relationship between incarceration and recidivism." In fact, in one research model. "offenders incarcerated for more than 120 months were estimated to be 45 percent less likely to recidivate." Id. In this case, Mr. White has almost served three decades he has paid for his drug offense for nearly half his entire life. The length of his incarceration alone makes him significantly more likely to lead a law-abiding life upon his release, which he will.

Additionally, Mr. White's age suggests his chances of recidivism are low. According to the Sentencing Commissions" older offenders are substantially less likely to recidivate following release compared to younger cohorts." As the commission found "age-increased recidivism by any measure declined, "resulting in a statistically significant correlation. Id. Based on the Sentencing Commission's data, Mr. White's age of 59 years old, particularly when considered with the length of his incarceration makes the chances of recidivism significantly lower.

Punishment extends beyond the years of freedom subtracted from one's life - it's also measured by the experience and moments missed. Mr. White has lost his daughter and brother and several other family members since his incarceration began. He

23

missed his grand mother's and grand father's funerals, his children's high school and college graduation, the birth of his grand children, and many other major life events. The profound effect this conviction has had on Mr. White will ensure that he carries the weight of his conviction forever. Life with out Parole is the second most serve penalty permitted by law in America. Mr. White is serving the same amount of time in prison as the Unabomber was with stark difference in the crimes. There is an enormous difference between a lengthy sentence and waking up daily set to die in prison. The reality of living and carrying the unique and heavy burden of a life without parole sentence daily, for 29 years (Cannot and should not be ignored).

C. Sentence Available

This Court is authorized and has wide discretion to reduce Mr. White's sentence to a term below Mr. White's current Guideline range for the reasons stated throughout this motion Mr. White respectfully requests a reduction of his life sentence to 33 years or time served.

D. The Need to Avoid Unwarranted Disparities.

Continuing to incarcerate Mr. White under a sentence that Congress, the Sentencing Commission, and this Court have acknowledge as unjustifiably long does not promote "respect for the law" and undermines the credibility of the justice system. See 18 U.S.C. § 3553(a)(2)(B). In addition, continued incarceration will create unwarranted disparities between Mr. White's sentence and the sentences individual who commit similar crimes would receive today. If Mr. White was sentenced today, he would face a significantly less severe penalty. This stark discrepancy highlights an inherent unfairness if a life sentence for his actions is deemed excessive and unjust now, it was equally so at the time of his sentencing. The law's evolution acknowledge past mistakes in sentencing practices, and it is imperative that this acknowledgment translates into rectifying those errors for individuals like Mr. White, who are serving

disproportionately, harsh sentences under outdated statutes.

Moreover, a sentence of 33 years or time served for Mr. White is on par with other simularly situated defendants in the Sixth Circuit and beyond Mr. White's sentence, if left un-altered, stands in stark contrast to those who have benefited from these changes in the law, further exacerbating the sense of unwarranted disparities. See Order Crides V. United Sates, No 01-CR-81028-1 (AJT)(E.D. Mich. July 28, 2020), Doc. No. 333 (granting immediate release on compassionate release motion for Mr. Crider who was previously, sentenced to life due to § 851 enhancement; Court held that Mr. Crider's record of rehabilitation from 17 years of incarceration significantly, mitigate his risk of recidivism·; United States v. Dusenbery, 2020 WL 6694408, at *5 (N.D. Ohio Nov. 13, 2020)(granting compassionate release and finding that while the change in law is not retroactive, a sentencing disparity along with additional factors, may justify compassionate release in certain cases); See also United States v. Crutcher, 2020 WL 8674673 at *1 (M.D. Tenn. Nov 30, 2020) (granting compassionate release motion and noting that were defendant sentenced today he would not have been subjected to a mandatory life sentence because of § 851 enhancement). To ensure that Mr. White's sentence is not on anomaly of a by-gone era but is aligned with the principle and values of today's justice system, we respectfully request a sentence reduction to 33 years or time served.

## CONCLUSION

Twenty-Nine (29) years in prison is a very, very long time. Mr. White availed himself of rehabilitation programs long before this opportunity to not spend the rest his life in prison presented itself. For almost (3) three decades Mr. White severely paid the price for his crime. He should be allowed the immediate opportunity to move beyond his mistakes and prove he can be a benefit to society. There is nothing to be gained by anyone to have Mr. White spend more days behind prison walls. For the forgone reasons, Mr. Danny White respectfully request this Court

grant this motion to reduce his life sentence to 33 years or time served.

Respectfully Submitted,

*Danny White* #04616-112
Danny White    7/26/2024

### Certificate of Services

I hereby certify that on July 26 2024, I dropped this motion in the inmate prison mail box to the Clerk of the Court for the United States District Court for the Western District of Michigan.

Danny White

Mr. Danny White #04616-112
Federal Correctional Institution
P.O. Box 9
Mendota, Calif 93640

CERTIFIED MAIL
7016 0340 0000 7724 9260

22.90
14.60
8.30

THIS CORRESPONDENCE DOES
NOT MEET BOP CRITERIA OF
SPECIAL MAIL HANDLING

Screened By
USMS

"Legal Mail"

United
for the

315
Lan



States District Court
e Western District of Michigan
"Clerk of Court"
West Allegan Avenue
sing, Michigan 48933